UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12bk26246 |
|  | ) |  |
| DEBRA A. MORROW, | ) | Chapter 13 |
|  | ) |  |
| Debtor. | ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

This matter comes before the court on the Movant's Motion To Reconsider the Court's Order of January 14, 2013 Denying Motion for Relief from Stay (the "Motion") [Docket No. 44] of movant Parkside Place Condominium Association (the "Movant") wherein the Movant seeks reconsideration of this court's Order Denying Without Prejudice Motion for Relief from Stay (the "Order") [Docket No. 43] which denied the Movant relief from the automatic stay.[1]

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case case under title 11. 28 U.S.C. § 157(b)(1). A motion for relief from stay arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(G). *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976-77 (N.D. Ill. 1992); *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.). It follows that a motion to reconsider an order regarding such a motion for relief from stay also arises in a case under title 11. *See* Fed. R. Civ. P. 60 (made applicable in bankruptcy per Fed. R. Bankr. P. 9024); *Elscint, Inc. v. First Wisc. Fin. Corp. (In re Xonics)*, 813 F.2d 127, 130 (7th Cir. 1987) ("Doubtless courts may enforce their own orders.").

---

[1]     The court notes that the Movant has, subsequent to the filings noted herein, again requested relief from stay based on new, postpetition grounds. The court's holding herein does not, as noted below, affect the Movant's request on such new grounds, to which the court will give reconsideration when the matter comes on for consideration.

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering the Motion, the court has considered the arguments of the parties at the February 4, 2013 hearing on the Motion and the January 14, 2013 hearing on the underlying motion for relief from stay (the "Hearings"), and has reviewed and considered the Motion itself, the Order, as well as:

(1)    The Motion for Relief from Stay [Docket No. 31];

(2)    Debtor's Response to Parkside Place Condominium Association's Motion for Relief from the Automatic Stay [Docket No. 38]; and

(3)    The Movant's Reply to Debtor's Response to Parkside Place Condominium Association's Motion for Relief from the Automatic Stay [Docket No. 40].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items together do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993); *Inskeep v. Grosso* (*In re Fin. Partners*), 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## BACKGROUND

In this matter, the facts are essentially undisputed. For the purposes of determining the Motion, the court therefore finds as follows:

(1)    Debra A. Morrow (the "Debtor") is the owner and resident of a condo in Illinois.

(2)    Some time prior to the commencement of the Debtor's chapter 13 bankruptcy case on June 29, 2012, the Debtor fell into arrears on her condo association dues to the Movant.

(3)    On June 6, 2011, the Movant brought an action in Illinois state court with respect to those arrearages.

(4)    On March 21, 2012, after the resolution of various procedural aspects of the state court action, the Movant obtained a money judgment in the amount of $7,288.00 (the "Judgment") and an order for possession per 735 ILCS 5/9-111 (the "Order for Possession").

(5)    Though the Order for Possession was automatically stayed for 60 days by operation of 735 ILCS 5/9-111, the state court judge exercised discretion and stayed the Order for Possession for an additional 30 days (for a total of 90 days).

(6)    On or about June 19, 2012, the 90-day stay of the Order for Possession expired.

2

(7)   Prior to that time, however, on April 20, 2012 and again on June 8, 2012, the Debtor's husband moved *pro se* for reconsideration of the Order for Possession. The Debtor's husband was apparently moving on the Debtor's behalf.

(8)   The motions for reconsideration were together scheduled for hearing on July 6, 2012.

(9)   Prior to the July 6, 2012 hearing on reconsideration, the Debtor, on June 29, 2012 (the "Petition Date"), commenced her chapter 13 bankruptcy case (the "Case"). On the Petition Date and at all times since that time, the Debtor was in retention of and has retained possession of the condo.

(10)  On July 6, 2012 (after the Petition Date), the state court denied the motion for reconsideration for lack of standing of the Debtor's husband to move on behalf of the Debtor.

(11)  On August 3, 2012 (also after the Petition Date), the Debtor appealed. The Movant has not disputed the validity of the appeal, but noted that no bond was secured by the Debtor.

(12)  On November 19, 2012, the court confirmed the Debtor's chapter 13 plan (the "Plan"). The Plan provided for payment to the Movant as a secured creditor of an amount less than that of the Judgment ($1,000 at 2% interest in monthly payments of $18 until paid in full).

(13)  The Movant did not object to its treatment under the Plan. The Movant also does not dispute that it accepted plan payments under the Plan, both pre- and postconfirmation. Nor does it dispute that it received notice of the Case and the Plan, and had an opportunity to object.

(14)  On November 27, 2012, the Movant sought relief from the automatic stay extant in the Case, alleging as its grounds the prepetition defaults underlying the Judgment and the existence of the Order for Possession.

(15)  On January 7, 2013, the Debtor moved to amend the Plan to increase the amount owed to the Movant to the Judgment amount, with payments also being increased accordingly. The Movant did not object to the motion to amend.

(16)  On January 14, 2013, the court entered the Order denying the motion for relief from stay because the Movant had failed to allege grounds arising after the confirmation of the Plan.

(17)  On January 28, 2013, the Movant filed the Motion, seeking reconsideration of the January 14, 2013 Order.

(18)  On February 4, 2013, the court ruled orally from the bench, denying the Motion and granting the motion to amend. At that time, the court stated that its reasons for denying the Motion would be more fully set forth in writing in a memorandum decision to follow.

DISCUSSION

The matter before the court consists of two independent, but related issues. The first is the question of whether a party provided for under a confirmed chapter 13 plan may nonetheless seek postconfirmation relief from stay predicated solely on preconfirmation grounds.[2] The second question is an issue of first impression in this court: Whether the existence of a prepetition "order for possession" arising out of 735 ILCS 5/9-111 in any way changes the answer to the first question.

The court will consider each question in turn.

A.    Postconfirmation Relief from Stay Based Solely on Preconfirmation Grounds

The nature of relief from stay litigation is not, in many instances, what it appears to be. To the uninitiated (and perhaps to some well versed in bankruptcy practice), it may appear that stay litigation is about the debtor's performance of its non-bankruptcy legal obligations. For example, it is not uncommon for parties to discuss how many months of default a debtor may have incurred regarding its mortgage payments when the court is asked to grant relief from stay to the applicable lender.

This is, however, a mostly mistaken appearance.

As one court within the Seventh Circuit has made clear, the litigation is instead about the relationship between the movant, the movant's collateral and the bankruptcy estate. *In re Moore*, 450 B.R. 849, 852 (Bankr. N.D. Ind. 2011). "It is not an adjudication as to whether the debtor is or is not in default, or whether the creditor is or is not entitled to repossess its collateral."[3] *Id.* Merely having defaulted on a payment obligation is not enough, especially a prepetition one, given that in chapter 13, at least, a debtor is authorized to cure certain defaults through its plan. 11 U.S.C. § 1322(b)(5).

What *Moore* makes clear is something that should be tautological: Any analysis of grounds for relief from stay must begin with the statute itself. Section 362 of the Bankruptcy Code governs such requests, and states, in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

---

[2]    In this case, the Movant brings a postconfirmation motion to modify the stay based on grounds that could have been asserted preconfirmation. As the Motion is brought postconfirmation, as discussed in detail below, the statutory authority for the Motion must arise solely from the "for cause" provisions in 11 U.S.C. § 362(d)(1). *See In re Clark*, 38 B.R. 683, 684 (Bankr. E.D. Pa. 1984).

[3]    Another thing stay litigation is not is an exhaustive inquiry into the underlying legal issues upon which stay relief is requested. "Hearings to determine whether the stay should be lifted are meant to be summary in character. The statute requires that the bankruptcy court's action be quick." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990).

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization ….

11 U.S.C. § 362(d)(1) & (2). As set forth in section 362(d), should a movant establish cause under section 362(d)(1) or should a movant satisfy the elements of section 362(d)(2) (lack of equity and not necessary to an effective reorganization), the court *shall* grant relief from stay. *Id.*; *see also In re White*, 409 B.R. 491, 494-495 (Bankr. N.D. Ind. 2009) (stating in detail that it is the movant's burden to plead facts which establish the grounds on section 362(d), not just to state legal conclusions).

The specifically recited grounds for relief from stay – lack of adequate protection under 362(d)(1) and lack of equity and necessity for an effective reorganization under 362(d)(2) – have received an abundance of attention by the courts, and need no further analysis here.

The road less traveled is, however, not so clear. That is to say, what constitutes cause absent a showing of lack of adequate protection is a grey area in bankruptcy jurisprudence. "What constitutes cause under section 362(d)(1) other than lack of adequate protection has been developed on a case-by-case basis." *Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (N.D. Ill. 1995). "Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." *Id.*

To be clear, courts have held that cause can be derived from defaults by the debtor, combined with other factors. *Equitable Life Assurance Soc'y of the U.S. v. James River Assocs. (In re James River Assocs.)*, 148 B.R. 790, 797 (E.D. Va. 1992) (holding that a continued failure to make mortgage payments along with a non-existent equity cushion can constitute "cause").

But as *Moore* makes clear, alleging such defaults alone, without anything more, is generally insufficient. *Moore*, 450 B.R. at 852. So, while the presence or absence of a default may be persuasive to some, the true question in relief from stay litigation is this: Has the movant established the legal grounds – as set forth in section 362(d) – for relief from the automatic stay?

There are three temporal circumstances in a bankruptcy case in which creditors commonly seek relief from the stay and where the result is clear-cut. First, at the outset of a case, creditors commonly seek relief from stay based solely on prepetition grounds. Second, prior to confirmation, creditors commonly seek relief from stay based on postpetition grounds (with, perhaps, some prepetition grounds added on). Third, after confirmation, creditors commonly seek relief from stay based on postconfirmation grounds.

As they pertain to a payment default, the court considers each in turn, as follows:

1.   *Prepetition Relief from Stay*

In the first instance, for the most part, courts have rejected motions for relief from stay predicated solely on grounds of a prepetition payment default. "The Debtors' failure to make even substantial prepetition payments is clearly not, as the Movants appear to suggest, *ipso facto* conclusive

in establishing the Movants' right to relief under § 362(d)." *In re Capodanno*, 83 B.R. 285, 288 (Bankr. E.D. Pa. 1988). "Debtor's prepetition payment behavior is relevant only insofar as it would suggest that equally unimpressive postpetition payment behavior will ensue. However, it must be recalled that poor prepetition payment histories are systematic of most debtors and hence this factor is, in itself, of very limited relevance." *In re Tashjian*, 72 B.R. 968, 974 (Bankr. E.D. Pa. 1987).

The filing of the bankruptcy case acts to give debtors, including debtors in chapter 13 cases, a breathing spell from creditors. Permitting relief based solely on prepetition grounds would be antithetical to the breathing spell that is, in some instances, so desperately needed by the debtors. "By halting litigation against the debtor, the stay 'gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'" *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) (*citing* H.R.Rep. No. 95-595, at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97).

    2.    *Postpetition Relief from Stay*

In the second instance, there is no doubt that, prior to the confirmation of a chapter 13 plan, a creditor is entitled to relief from stay upon a sufficient showing of the debtor's failure to cure a significant postpetition default. 11 U.S.C. § 362(d). The determination of what constitutes a significant default, and thereby "cause" under section 362(d), is done on a case-by-case basis. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (*citing In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)); *see, e.g., In re Swift*, No. 07-12787, 2009 WL 535986 (Bankr. N.D. Ill. Feb. 19, 2009) (Barbosa, J.) (granting motion for relief from stay for failing to make three postpetition monthly payments on a mortgage); *see also In re Thongta*, 480 B.R. 317, 318 (Bankr. E.D. Wis. 2012). *But see In re Willowood E. Apartments of Indianapolis II, Ltd.*, 113 B.R. 392, 395 (Bankr. S.D. Ohio 1990) (denying motion for relief from stay where debtor was one-month in default); *Delany-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 370 (B.A.P. 9th Cir. 2003) (unsubstantiated allegations of a default are insufficient to grant relief from stay).

    3.    *Postconfirmation Relief from Stay*

Finally, should a party establish sufficient postconfirmation grounds, it too is entitled to relief from stay. *See Bryant v. Tidewater Fin. Co. (In re Bryant)*, 430 B.R. 516 (Bankr. C.D. Ill. 2010) (granting relief from stay when the debtor defaulted postconfirmation in her maintenance payments under the plan); *OneWest Bank FSB v. Arizmendi (In re Arizmendi)*, No. 09-19263-PB13, 2011 WL 2182364 at *8 (Bankr. S.D. Cal. May 26, 2011) ("Here, there is a default under the Plan; and, thus, the mandates of Congress are clear the Court shall grant relief from stay."). *But see In re Brown*, 70 B.R. 10, 12 (Bankr. S.D. Ohio 1986) (a plan default, unless material, does not constitute "cause" to grant relief from stay).

This last circumstance, however, is not without complication as to what constitutes sufficient postconfirmation grounds.

It is notable that section 362(d)(1) contains no direct temporal instructions regarding grounds for relief from stay. Section 362(d)(2) is silent as well. It implies that the grounds set forth therein must be present grounds by phrases such as "does not have" and "is not necessary," but never clarifies whether past grounds alone suffice. For example, would a failure to insure a vehicle after the petition date constitute a lack of adequate of protection if, prior to the filing of the motion

thereon, insurance is obtained?  It is not uncommon that a lender will move for relief from stay on such grounds, only to be faced with a debtor with newly acquired insurance at the hearing on the motion.  Who is right here?  The debtor has fixed the problem, but only when required to do so.

The courts that have considered postconfirmation relief from stay motions in any detail have, without fail, concluded that after confirmation, a movant's grounds generally are limited to postconfirmation defaults on the debtor's plan.  *See, e.g., In re Randall*, 98 B.R. 916, 918 (Bankr. N.D. Ill. 1989) (Squires, J.) ("A creditor's motion to modify the stay after confirmation can be an appropriate vehicle only when there is a postconfirmation default by the debtor."); *In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986) ("[T]he debtors' failure to make postconfirmation payments would constitute a material default by the debtors with respect to the terms of the confirmed plan within the meaning of 11 U.S.C. § 1307(c)(6) and is a specific ground for converting or dismissing a Chapter 13 case. Manifestly, the debtors' failure to make postconfirmation payments will also constitute cause for lifting the stay.").  In other words, such courts seem to look to present, not past grounds.

Further, postconfirmation grounds appear to rest entirely on the "for cause" provisions of section 362(d)(1).  "The issues of adequate protection and equity in the property are irrelevant in the face of postconfirmation payment defaults because creditors are entitled to rely upon the debtors' responsibilities to make their postconfirmation payments."  *In re Davis*, 64 B.R. at 359-60.  And such cause is, most specifically, the debtor's adherence to or deviation from its plan.  *Americredit Fin. Servs. v. Nichols (In re Nichols)*, 440 F.3d 850, 856 (6th Cir. 2006) ("A majority of courts that have construed the 'for cause' provision of section 362(d)(1) have found that a debtor's failure to make payments to the creditor after confirmation of the plan can constitute cause to modify or lift an automatic stay."); *In re Quinlan*, 12 B.R. 516, 517 (Bankr. W.D. Wis. 1981) (finding that a debtor's "unexcused failure" to make direct payments to a creditor in accordance with confirmed chapter 13 plan constituted cause to grant relief from stay).

Why would postconfirmation grounds be so limited?  Why should the court treat postconfirmation motions for relief from stay differently than preconfirmation ones?  This is a source of some confusion for practitioners appearing before the court.

The answer, of course, is in the question.  The difference lies in the act of confirmation itself.

a.     A Confirmed Plan Is Statutorily Binding

First and foremost, the Bankruptcy Code itself states that confirmation of a Chapter 13 plan is binding on all parties.  "The provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).  "[B]y operation of this section [1327(a)], it is clear that a creditor cannot thereafter assert [. . .] [issues] that could and *should* have been raised in objections to confirmation."  *In re Fox*, No. 97-83258, 1998 WL 34064937 at *1 (Bankr. C.D. Ill. Mar. 11, 1998) (emphasis added).

For any matter within the scope of confirmation, therefore, section 1327(a) dictates that such matter is, to extent addressed thereby, resolved.

What, therefore, is within that scope?

The process of confirming a Chapter 13 plan, much like process of finalizing contracts, requires all parties to examine every proposed detail, the right of every party, and ultimately determine that the deal is in their own best interest. Specifically, the bankruptcy court must make a finding that the plan has been proposed in good faith, and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3). With respect to the latter concern (good faith), the Seventh Circuit has stated that the court must take into account "the debtor's treatment of creditors both before and after the petition was filed." *In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005) (*citing In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).

Further, the Bankruptcy Code dictates that a court may only confirm a plan if the court finds that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). In determining feasibility, the court looks not only to the plan itself but to a debtor's past performance, especially under the proposed plan, "as the most credible indicia of their future performance." *In re Ross*, 231 B.R. 635, 639 (Bankr. S.D. Ohio 1999).

Thus the question of the debtor's treatment of its creditors postpetition, namely its payments to such creditors as called for by the debtor's plan, is squarely before the bankruptcy court at the confirmation hearing.

    b.      A Confirmed Plan Has *Res Judicata* Effect.

In addition, confirmation orders are no different than other orders of the court: Provided that adequate notice and due process are afforded to affected parties and that such orders are within the scope of the court's jurisdiction and authority, such orders bind the parties so affected until such time as the orders are altered or amended by the issuing court, overturned on appeal or otherwise abrogated. Any collateral attack on the confirmation order, a final and appealable order, is subject to *res judicata* principles. *In re Commings*, 297 B.R. 701 (Bankr. N.D. Ill. 2003) (*citing In re Wade*, 991 F.2d 402, 406 (7th Cir.1993)) (Goldgar, J.). *Res judicata* is a foundational principal of our legal system, a rule of fundamental and substantial justice that serves to maintain the private peace once an issue between parties has been litigated, and, as such, should be enforced by the courts. *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917). Final orders of the bankruptcy court are entitled to no less deference.

In addition to the issues regarding feasibility and good faith discussed above, at confirmation, one of the most salient objections that can be brought by a creditor is that the debtor is in breach of its proposed plan. If such an objection is brought, unless the breach is immaterial, the court will not confirm the plan.

The Seventh Circuit has held that a creditor's failure to raise an objection at a confirmation hearing precludes that creditor from a later attack on the plan in a subsequent hearing. *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993); *see also Harvey*, 213 F.3d at 321 ("[A] party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan."). Allowing a creditor to raise issues postconfirmation that should have been brought preconfirmation "would severely undermine the principles of finality that are subsumed in the *res judicata* doctrine and the Bankruptcy Code." *In re Jones*, 134 B.R. 274, 279 (N.D. Ill. 1991).

"The reason for this is simple and mirrors the general justification for *res judicata* principles- after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical

problems in a subsequent proceeding." *Harvey*, 213 F.3d at 321; *In re Jones*, 134 B.R. at 277-78 (*quoting In re Guilbeau*, 74 B.R. 13, 14 (Bankr. W.D. La. 1987)) ( "Courts have ruled that '[t]he Order of Confirmation is *res judicata* as to all justiciable issues decided or which could have been decided at the hearing on confirmation.'"). It is worth noting in this context that, so strong are the principles of finality and *res judicata* as they relate to confirmation orders, that the Supreme Court has ruled that a bankruptcy court's failure to follow statutorily required steps on confirmation and a debtor's failure to provide forms of notice required did not, even taken together, act to undo the effect of the confirmation order entered by the court. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

Items within the court's consideration, such as the debtor's postpetition treatment of creditors, are within the scope of such *res judicata* effect. If a court determines that its finding of good faith and feasibility implicit in confirmation of the debtor's plan constitutes *res judicata* on the creditor's ability to predicate a request for relief postconfirmation on a performance issue that was undisclosed in the context of the confirmation, then the creditor's failure to object (or otherwise act) prior to confirmation should not be rewarded.

To be clear, that is exactly what the court finds here. Neither the court nor the debtor's counsel is always privy to information regarding a debtor's postpetition performance. When a debtor's plan calls for the debtor to make direct payments to a creditor, the debtor and the creditor are in the best position to know what has transpired. Debtors rarely understand what is expected of them postpetition, despite in some instances the best efforts of counsel to advise them. They confuse plan payments with direct payments, assume payroll control orders cover otherwise required actions, and generally are prone to the same lapses that may have necessitated the bankruptcy to begin with.

In the event of such lapses, it is imperative and in each affected creditor's best interests that such creditor inform the court that a debtor's performance has not been in accordance with the proposed plan. *See, e.g., In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) ("[A creditor is] not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings."); *see also Harvey*, 213 F.3d at 322 ("[I]t is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous.").

A creditor who lies in wait and, rather than speaking up, ambushes the debtor postconfirmation has, rather than enhanced its rights, slept on them. The creditor could have moved to lift the stay or objected to the plan, but chose instead to allow the debtor to proceed with confirmation despite its knowledge of the default.[4] Such creditors should not be rewarded for their deceit.[5]

---

[4]      Of course, should such creditor be able to establish that it was somehow unaware of the default and/or the confirmation, equitable principles (as well as fundamental concerns of due process) dictate that such creditor be afforded an opportunity to make its case. No bright line rule in such instances is being created by the court's ruling today.

[5]      Such behavior is strikingly similar to behavior that was the target of extensive investigation by the United States Department of Justice, the United States Department of Housing and Urban Development, and 49 state attorneys general. In five parallel consent judgments with prominent financial institutions (collectively, the so-called "National Mortgage Settlement"), alleged violations of state and federal law were

c.     A Confirmed Plan Is a *Binding* Contract

Akin to a court-approved contract, a confirmed plan binds all parties affected by the contract – the debtor, the trustee and all creditors. *In re McDonald*, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006) (Schmetterer, J.) (*citing In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000)); *Beskin v. McPherson (In re McPherson)*, 350 B.R. 38, 46 (Bankr. W.D. Va. 2006) ("The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor.").

Judge Pepper in the Eastern District of Wisconsin noted a number of courts that have also so held, as follows:

> Other courts have reached the conclusion that the debtor's Chapter 13 plan has the effect of creating a new contract between the debtor and the secured creditor. *See, e.g., In re Nicholson*, 70 B.R. 398, 400 (Bankr. D. Colo. 1987) ("the plan itself has the effect of making a new agreement between the debtor and the creditor with a new obligation to be paid in the manner provided for by the terms of the plan"); *In re Crittendon*, No. 06–10322, 2006 WL 2547102, at *4 (Bankr. M.D.N.C. Sept. 1, 2006) ("The confirmed chapter 13 plan constitutes a new agreement between the debtor and the creditors and is controlling as to the payments to be made to creditors as well as to which of the creditors are secured creditors."); *In re Edmunds*, 350 B.R. 636, 645 (Bankr. D.S.C. 2006) ("a debtor's plan represents a new contract with his creditors and therefore Debtors may only take a deduction [from the disposable income calculation] to the extent that Debtors are treating these creditors as secured creditors scheduled for payment by Debtors in their chapter 13 plans"); *In re Spurgeon*, 378 B.R. 197, 201 (Bankr. E.D. Tenn. 2007) ("[C]onfirmation of the plan will change the facts relevant to the deduction. The amounts that would otherwise be due under the contract after the debtor filed the chapter 13 case will not be scheduled as contractually due to a secured creditor.").

*In re Bodegom Smith*, 383 B.R. 441, 450 (Bankr. E.D. Wisc. 2008).

As with any contract, a party with knowledge of a material breach of such contract extant on the date the contract is formed, but who enters into the contract nonetheless, is precluded from asserting the consequences of such breach. *Cummings v. Dusenbury*, 129 Ill. App. 3d 338, 342 (1984) (*citing Steinmeyer v. Schroeppel*, 226 Ill. 9, 13 (1907)) (Unilateral mistake regarding material element precludes breach of contract claim because there was no mutual assent and, therefore, no contract); *see also In re Neals*, 459 B.R. 612, 617 (Bankr. D.S.C. 2011) ("[A] confirmed chapter 13 plan, which

---

settled by the imposition of strict behavioral guidelines on the institutions. One prohibited behavior is "dual tracking," when a lender moves ahead with foreclosure while at the same time negotiating a loan modification. Dual tracking is expressly prohibited by the National Mortgage Settlement.

Creditors who allow a debtor to jump through the legal and financial hoops required to confirm a Chapter 13 plan (which plans are very often proposed primarily to save the debtor's home) while at the same time preserving their relief from stay rights on known missed payments are, however, in a very real sense, dual tracking the debtor's bankruptcy case.

represents a new contractual agreement between debtors and their creditors, is *res judicata* on the issue of a creditor's rights as a party in interest with standing to seek relief from the stay.").

As noted above, it is within the bankruptcy court's discretion to determine cause and it is solely cause that is properly the grounds for a postconfirmation relief from stay motion. It is therefore this court's determination that a relief from stay motion predicated solely on preconfirmation grounds, especially when brought right after the plan has been confirmed, lacks such cause and is not well taken.

    4.    *What Remains*

The preceding discussion does not necessarily mean that the debtor gets a free pass for preconfirmation failures, however. The debtor is still in violation of the terms of its confirmed plan (by failing to make preconfirmation payments), and should such violation exist uncorrected for longer than is reasonably necessary to correct it, it is the court's opinion that a new, postconfirmation ground will have arisen (similar in many ways to a preconfirmation lack of adequate protection). Further, if new, independent postconfirmation grounds arise, the court would expect the affected creditor to remind it of the preconfirmation breach. The court will certainly consider the existence of such breaches in determining how lenient, if at all, the court should be with respect to such new issues. It is simply the court's ruling here that, standing alone and considered shortly after confirmation, such preconfirmation grounds do not constitute sufficient cause for the court to lift the stay.

The court points out one final note on the practicality of the foregoing ruling. Being aware of the possibility of such abuses has certainly made this court more vigilant in asking about breaches prior to confirmation. This may have the perverse effect of harming debtors who might have been able to confirm over less-than-vigilant creditors had the court not hereby forced those creditors' hands. This ruling does not prevent a debtor and affected creditor from making a direct agreement on how to deal with the preconfirmation breach; the court has been asked to enter such agreements so as to allow a debtor to confirm despite the existence of a known breach (in the same way such creditors will modify their plans prior to confirmation to defer trustee breaches, etc.) and can and will consider them in the future on a case-by-case basis. Such agreements may be appropriate, and should they be entered, would obviously change the way the court deals with the facts and circumstances set forth herein.

B.    <u>Effect of Prepetition Order for Possession</u>

Section 541 of the Bankruptcy Code dictates what compromises property of the bankruptcy estate that the debtor may administer in its chapter 13 plan. Section 541 provides, in relevant part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case . . .

11 U.S.C. § 541(a)(1).

The estate is defined broadly and includes all cognizable interests of the estate, unless they are expressly excluded in subsections (b) and (c)(2) of section 541. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). For that reason, section 541(a) is to be given broad interpretation. *Quade*, 482 B.R. at 225 (*citing In re Jones*, 768 F.2d 923, 926-27 (7th Cir. 1985); *Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526, 530 (Bankr. N.D. Ill. 2002) (Schwartz, J.), *aff'd*, 293 B.R. 443 (N.D. Ill. 2003)).

What is critical to the analysis of this case is the determination of whether the Debtor had the possessory interest "as of the commencement of the case" that then became property of the bankruptcy estate. The Movant alleges that the state court's issuance of the order for possession immediately defeated the Debtor's possessory interest in the Property and that, while the Debtor still maintains ownership of the Property, until the Judgment is satisfied in full, the Movant has an exclusive possessory interest in the Property.

This court has been afforded the opportunity to consider the effect of an order for possession under Illinois law in previous matters, and has concluded that such an order affords the creditor no greater rights than that of a creditor that may have, for example, repossessed collateral prior to a bankruptcy. While it is true that such an order for possession, if executed upon, results in a transfer of possessory interests, *In re DiGregorio*, 458 B.R. 436, 443 (Bankr. N.D. Ill. 2011) (Schmetterer, J.), such an executed order nonetheless does not divest the debtor of its interest in the property. What remains becomes property of the estate by operation of section 541. Further, a creditor's rights in such circumstances to avoid the transfer, to allege that failure of the creditor in possession to turnover property constitutes a violation of section 542 of the Bankruptcy Code, or otherwise, are not waived thereby.

Such is further the case here, where the order for possession was not executed upon. In such a situation, not even the possessory interest transfers. *United States v. One 1971 Rolls Royce Corniche*, No. 86 C 1321, 1988 WL 20089 at *1 (N.D. Ill. Feb. 29, 1988) (finding that when courts are referring to a possessory interest they are referring to a situation in which the claimant has physical possession).

It is, therefore, clear that under the facts of this matter the debtor's possessory interest in the Property continued as of the commencement of the case, and that upon the filing of the bankruptcy petition the possessory interest became a part of the bankruptcy estate under section 541. As such, the mere existence of an order for possession does not serve as grounds for relief from stay, pre- or postconfirmation. Further, for the reasons discussed in detail above, Movant's request for postconfirmation relief on such prepetition grounds is untimely. The confirmed chapter 13 plan is binding and provides for the disposition of the subject property.

CONCLUSION

For all of the foregoing reasons, the court concludes that after reconsideration, the court's denial of relief from the automatic stay for cause was correct, and that the Motion is therefore not well taken. A separate order will be issued, concurrent with this Memorandum Decision.

Dated: June 26, 2013

Hon. Timothy A. Barnes
United States Bankruptcy Judge